Hear ye, hear ye, this Honorable Appellate Court of the 2nd Judicial District is now back in session. The Honorable Susan F. Hutchinson will preside. Please be seated. Your Honor, the final case we will be talking about this morning is 2-22-0389 Luis Correa Tarango, plaintiff's appellant, v. Village of Carpentersville, defendant's appellate Arguing on behalf of the appellant, Mr. Dan E. Compton Arguing on behalf of the appellate, Mr. Paul W. Asher Hi, good morning gentlemen. And Mr. Compton, if you're ready you may proceed. Thank you, Mr. Court. Thank you so much for having a live argument. I even called this morning to make sure we could actually show up and I appreciate the opportunity to talk about this case in front of three live human beings. Well, we're live on Zoom, guys. I haven't noticed any of my colleagues dead on Zoom yet. Well, there's some judges I've met. Your Honor, it's very interesting in preparing for the argument today. One thing I noticed about conditions, whether they were found by the court to be open and obvious or not and whether they were found to be distractions or not, was every single person after they fell down is asked, well, after you fell down, did you look and see the hole? And every single one of them says, yeah, I did. Now one plaintiff in the history of Illinois jurisprudence has said, after I tripped and fell or slipped and fell on this defect, I still couldn't see it. So the question, as I think I cited a dissent in my reply brief, the question is why are people continuing to fall on things? And does this fall into one of those categories where even though you can see something, it is either not open and obvious because of the circumstances surrounding the fall or the conditions that were there in the fall, or the other exception, was there a distraction under those circumstances that could be anticipated by the respondent? So first of all, the other thing I noticed was that Judge Gush, when he came out, asked can a plaintiff, by their own testimony, cause a question of fact? And my answer to that is absolutely so. If there are ten notary publics that were looking at this hole and saying it's open and obvious to us, but the plaintiff said here is the factual issue, I was stepping off the curb, the car was over part of it, it was a loading and unloading zone, with the shadowing and the shading, I think we've all read that ad nauseum, this hole was right next to a patch. So I think the plaintiff did in this case create a question of fact, and I think Judge Gush erred in saying I don't think a jury gets to decide whether it was open and obvious in this situation, I am going to decide. The plaintiff was aware that there had been complaints about the roadway itself, not this particular pothole, but the roadway itself was not in good condition, right? That is absolutely correct. And the reason that I'm not impressed by that from a policy perspective is as pointed out, if I let this thing go until it gets so horrible that the mere presence, I mean, do we say the street is by its mere presence alerting to an open and obvious condition, how about the city of Carpentersville, can the city of Carpentersville say, we don't repair our streets, what do you expect? So from a policy provision, the fact that the street was in a state of disrepair goes to notice to the defendant, but not as necessarily notice of a specific defect in a specific situation to the plaintiff. Otherwise, you could just put a sign at the border to say streets are bad, watch it. Your argument is that in this case, as opposed to the cases cited by the village, this lighting condition, the shadows from the car are really a distinguishing feature, correct? Yes, and this court even in the, I apologize for not knowing the panels on those two unpublished opinions, and I am certainly baffled by the amendment to Rule 23, only because the two unpublished opinions don't appear, they appear to be cited as governing authority and not persuasive authority, but I noted each in the village of Addison case, and in, I apologize, Battelli versus Addison, and Conner versus Wheelington Enterprises, the second district noted, well, you know what, the plaintiff didn't say there was any condition that was covered, there was gravel that was hidden to my eye, there was any reason that this wasn't patently obvious, because we could all go, we could take this panel and do a site visit to the village of Carpentersville, we could stand around and say, yeah, I see the hole. And it's the same with Becker versus Alexian Brothers, the plaintiff said there's a rust-colored floor grate, I didn't appreciate the damage because it was dark. Barnett versus FX Group, the court said, well, it wasn't an open obvious because the lighting was dim. In Al-Qadi versus Standard Parking, the testimony was, even though it was an obvious step, the colors in the change between a vertical and a horizontal surface was enough to cause that to be difficult to see, even though after you fell. It's not a Kimbrough versus Jewell where the lady fell down and she said, well, I don't know if I slipped on the grate or the grease spot or something else. It's right there on the curb. Why do you think we paint those yellow? Why isn't there just a law, a rule, that when you trip on a curb, it's open and obvious? Because in different circumstances, there can be different issues. And in this case, it is in an area along a residential street that allows parking and loading and unloading. So think about this for a moment. The same pothole, if a passenger was getting out of that car, could have stepped out and into the pothole and injured themselves, and the pothole would be close to where she started, like the defendant points out, the post in Ward versus Kmart was very close to the door, but this would be the same pothole and a different result. And again, from a policy standpoint, that's a little confusing to me. Our client was coming out from the house, walking across the lawn, opening up her trunk, getting in. The city of Carpentersville can say in this particular circumstance, where it's in a loading and unloading area, there's reason to believe it won't be obvious. They won't perceive it. And then on top of that, we've got our client saying, even when I looked, the shading from the curb and the car and the gravel caused it to be difficult to perceive this risk. Just like in Becker versus Alexian Brothers, where the lady said, I'm looking at a whole garage full of perfect concrete, and there in the middle is this rust-colored thing, but I could not perceive the risk that ended up injuring me. And I think that is the situation we have here almost exactly. I have a question. Sure. Several times you've used the term unloading and unloading area. Is there a sign to that effect, or we're just assuming that people park their cars there and put stuff in and take stuff out? Well, I think I said it. This is on the street. I did. We are on the street, and there are pictures showing that there's residential parking along the street with no signs. I think I cited, oh, good grief, I cited a case which is not coming to mind right now, where the Supreme Court was talking about a fellow that hurt himself in the street loading and unloading, and the case was, were you legally or illegally parked? And the fellow said, I was legally parked. And, therefore, the court said, well, then you are a user of the street for the purpose of this case, and we have to accept that because there's no testimony to the contrary. Well, and there's also some testimony from one of the sisters that either this pothole or potholes have been along here for 10 years. Was it this pothole or potholes have been here for 10 years? It's a little confusing. Do you know what? I wish I could tell. How many times has there been a summary judgment or a trial when you all practiced and you thought I should have had a crystal ball and asked these questions, and I can't answer your question, and I've read the record as well. See, lawyers shouldn't ask questions they don't know the answer for because it might have been here forever, and that's the same one. It's confusing. It is, and I'll warrant, but in this case I don't think confusion in the record takes away from the fact that there's a question of fact. It might even add to the question of fact. Just like when our client was presented with the picture of the hole and said, is this a true and accurate depiction of the hole on the day he fell? And she said no. And yet the trial court, though he was troubled by it, as he should have been, still considered the picture in deciding as a matter of law it's open and obvious, and I wish somebody had asked at the deposition how is it different and given the plaintiff a chance to explain, even though I think, you know, she's maybe a little more lucid than I am, but she had difficulty obviously expressing herself, but in this case she said it's not the same, and that alone would say, all right, the picture's out for consideration because it's summary judgment and they have to accept what the plaintiff says. Well, didn't she allude to the fact, though, that her car was parked there and she couldn't have seen it all, and she had one other fact that I can't remember? Well, she was carrying packages out to her car, and that's why we talk about the fact that this is notice to the village that this isn't a loading and unloading area. It's a residential street with parking along it, certainly no signs prohibiting it. So she's walking across the lawn. She's clicking her clicker. She's opening her trunk. She's stepping down to place the packages that she's holding in the trunk and stepped in the hole. So I think as far as open and obvious, in this case it meets the test of the Becker case, the Barrett case, the Adachi case. And after a fashion, Bukakian v. YMCA, which is the defective difference in the formats, where it's this situation that makes this format, which if we rolled it out before the court and said see where it sticks up, that's one thing. If it's in a restaurant right next to another mat and it's difficult to perceive, that's another. But Harris v. Old Kent Bank, it's a case the defendant didn't distinguish, and I don't know if I'd have tried or not if I was the defendant. But that case dealt with a de minimis hazard, which is kind of the other side of the open and obvious, where we say you don't have to fix every single little thing or the burden would be terrific. But in that case, the plaintiff was going out of the bank, tripped on a de minimis hazard, and the second district in a published opinion said, well, the defendant there would have reason to understand that the plaintiffs were coming in and out, that people were coming in and out, counting their change, counting their money, looking at their deposit receipts. And so I think it's the same issue here relative to open and obvious. Is there a question of fact for the jury? And given that if she was walking across a parking lot or across the street in the potholes right in the middle and she says I saw it approaching and then looked at a bird or started talking to my friend, we've got a different situation. So the same thing bleeds over to distraction. And it is very difficult because these same issues that govern whether there's a duty or not all bleed over then into comparative negligence and the distraction doctrine. Can I say there's a duty on what would be otherwise open and obvious if the defendant can believe that there are circumstances that would distract the plaintiff from this open and obvious danger? And in that case, Your Honors, it's terrible because the case law is all over the place. There's appellate court decisions talking about how many weeds were there. There's appellate court decisions talking about whether it was dark or light. There's appellate court decisions talking about whether you're carrying a football helmet or not. Our lady wasn't carrying a football helmet, but she was carrying bags. She was loading them into her car. And I think for the distraction exception, just like Ward v. Kmart, they said, and, you know, there is the judge said you can't create your own distraction and he was referring to where the car was parked. But I don't think that's really the issue, and it looks like appellate courts have struggled with this a little, the distraction exception. I don't think the distraction has to be of the defendant's doing. I think the circumstances have to leave the defendant to be able to anticipate the distraction because certainly in Ward v. Kmart they could anticipate that people were walking out with packages, but I wouldn't say that selling people packages is creating a distraction. In Rex Road v. Springfield, that's where the high school kid was coming out with his football helmet, in which everybody said was open and obvious. But they said, and the respondent's brief said, well, his coach asked him to do it, but the appellate court decision doesn't say anything about, well, his coach asked him to do it. The appellate court decision says, the Supreme Court said, the defendant could anticipate circumstances where people would be distracted. And in this case, certainly with auto parked and loading and unloading, I think that's the situation here, and I think a jury should hear this and decide, perhaps send a plaintiff away with nothing, perhaps give them a couple dollars, but that's the jury's job. Thank you very much. Thank you, sir. You'll have a chance to respond if you choose to. Mr. Cachey. Thank you. May it please the Court, I'm Paul Cachey on behalf of the Defendant Appellee. I guess I would like to start by answering one of the first questions counsel raised, which is why would someone fall if something was open and obvious? And the answer, I think, which was also addressed by the Bruns Court and the Condor Court, is because the plaintiff wasn't looking. And in this case, we have the plaintiff's own admission that she was not looking. She stated she was looking at the car. She stepped off of a curb onto a street that was in poor condition, that was known to be in a poor condition, and she didn't look where she was stepping. That's why, I mean, I think ultimately that she fell. And if she had looked, she would have seen the open and obvious pothole. And because of... I mean, it's pretty obvious, though, too, that her car is sitting, appears to be sitting over some of it. She says she doesn't really see the change in the coloration because of the shadow of her car and the shade trees somewhere in the vicinity. So if she was looking, it doesn't look like she would have seen it anyway. Well, that's her testimony, that she wouldn't have seen it anyway. However... Why doesn't that create an issue of fair? Because of the, first of all, the undisputed dimensions of the pothole. I'll talk about the photograph in a minute, but you have a hole that's 4 to 5 inches deep, 7 inches wide, and it appears in the photo, but even without the photo, she's testified it was long enough to fit her foot into. It was longer than her shoe. About 12 inches long, she said, I think. Yes. And again, given the fact that the curb is there, and then you have another 4 inches to go, and you've got a crumbled rug, but there's no testimony that, by any of the other witnesses, that there's a shading issue there. And in addition, we have the fact that you pointed out earlier, that the mother, the sister, and the plaintiff had all been in this area multiple times beforehand. The mother and the sister had complained to the city or to the village about the condition of the road. And that really, I suppose it might be a little bit of a forest and trees analogy, but that's really what the Bruns Court looked at and what the Condor Court looked at, was that it was the condition of the entire area. You can't just focus on one single spot. So what is the village's position? Is it the condition just of that particular pothole or the road in general as to whether or not what's open and obvious? Is it the road in general, or is it the specific pothole? I think the village's position is both. The testimony of the village engineer who testified that they had had surveys done and that this entire street had been graded very poor speaks to the condition of the entire road. I think the photographs, as a whole, that are in the record show that there are potholes all over the road. There are gravel spots all over the road. This pothole abutted the curb, which is kind of an unusual place for that large of a pothole, right? I don't know that having a pothole on the curb is unusual. I don't know that there's any evidence as to that particular aspect of it, whether it's usual or unusual. I do know that it's not concealed and it's not a subtle pothole. The area was not dark or dim. The plaintiff admitted it was in full daylight in the middle of the afternoon in August. She admitted there was nothing obstructing her view, so the placement of it next to the curb was not enough to obstruct her view by her own testimony. Her testimony was that even if she looked at it, she wouldn't be able to see it because of the shading from the vehicle. Except that, that doesn't mitigate the fact that the entire roadway was in poor condition, and she admitted she didn't look. Even if there was shading in this particular area, which I'm not saying the village concedes that, the analysis is the entire area that she's stepping into. She's stepping off a curb onto a broken roadway. The entire roadway is known to be a hazardous area, and she's not looking where she's going. But I think, if I'm hearing Justice Pratt correctly, you know, we don't think of a pothole being next to a sidewalk or next to the curb because they're usually caused by moisture or weather, and then cars going over it repeatedly to cause it to degrade. If we're talking kind of outside the record, I would say you're more likely to get cracks from weather, from hot and cold expansion near a seam, like where there are curbs. Well, even potholes, I think that's where the pavement crumbles, is on the edges. Again, this is not, I'm kind of talking outside of the four corners of our record here. So one question that comes up in the case law is how many times the plaintiff may have traversed the area in question. What's the evidence on that? And I understand the general roadway condition argument you're making, but what about this particular area, this pothole or the immediate surroundings of the pothole? Right. This place where she fell was one car length away from her mother's driveway. She testified that she grew up in that house as a child and moved out when she was an adult. And then her testimony was very specific that in the year before her fall, she had visited three times. So we know that at a minimum, she visited it once during her childhood and three times in the year prior to. And we also know from the other evidence that the roadway had been in a poor condition for about 10 years and that her mother and her sister had complained during the year prior. And we also know from the plaintiff's answers to interrogatories that she was aware of the complaints that had been made during that time. So that's what the record shows us on that particular question as far as her awareness of the condition of the road. So getting back to... We don't know precisely how long that particular pothole was there at all. I don't think that there was any evidence that pinpointed exactly when that pothole first appeared. Do we have any records from when the village had filled some of the potholes? Was there any testimonies to the latest work that they had done? The evidence from the engineer was that there had been some repairs done on that road during the year before the fall. But no specific dates? But no specific dates, and some done in the months following the fall. Again, without specific dates. I don't think that there was a chart that listed exactly what day each specific pothole was filled in. And I honestly don't think that's kind of how they do it. I don't know that they keep that specific. If you have a work in construction or work on roads, there's usually a chart where you just mark off where you ended the date and what you did. Not necessarily the particular potholes, but... That's exactly it. And what's in the record is a list that shows when they worked on that roadway, but it doesn't say what they did in particular. The last thing I wanted to talk about with regards to the open and obvious is just that the nature of the defect itself I don't think is what is in dispute. And I think the Condor Court and the case that the Condor Court relied on from the 4th District both addressed this shading issue and said that when the size and the location of the defect are not in dispute, the shading issue is not a factor in whether it's open and obvious. So that leads us to the distraction exception. So just to sort of tie this together for my own sake, if the hazard is open and obvious, that negates two of the elements of duty as set forth by the Bruns Court. But an exception to open and obvious is if there's a distraction. And as the Bruns Court itself discussed, and as are discussed in the myriad of cases cited by both parties, this distraction has to be something that is either a significant obstacle, like weeds growing and concealing the open and obvious hazard, or it has to be something on the lines of an urgent matter. The student with the football helmet was trying to get back quickly because his coach had ordered him to do this as quickly as possible. The ward plaintiff had a mirror that blocked his view of everything and the position of the post that he ran into was such that he didn't have the opportunity to even look around his mirror, which is how the court decided that case. In this case, we have the plaintiff. She didn't say that she was holding her bags of clothes in front of her face, that it was blocking her view. We don't have any sense of urgency that she was under no duty or obligation. There was no wall collapsing on her, which was one of the circumstances in the cases that created an urgent scenario that the plaintiff had to avoid to the detriment of himself falling into the open and obvious hole. We don't have power lines running closely by a constricted work area, like the plaintiff that was working on the billboard who got shocked. We're out in the open, no hurry, nothing that she's carrying that is blocking her view of where she's going. I don't think that rises to the level of a distraction. I think before we can get into the effect of the distraction, we first have to have an objectively identifiable distraction, and I don't think that the plaintiff has demonstrated anything here that would constitute a distraction. Is there any sort of an incident report from maybe first responders or if the police were in fact called that would tell us how much of that hole might have been blocked by the car? We don't have a first responder report. The plaintiff didn't seek medical attention until several weeks later, and nobody was called to the scene at the time. So we don't. But at the same time, we know that it was in early to mid-afternoon on a summer day. So we can, I think, based on experience, have a pretty good idea that this son was probably close to directly overhead. She didn't fall under the car. She didn't step under her car. This was adjacent to it. So, again, she's the only one that testified to the shading. Her sister and her mother did not testify that they ever had any problems seeing the pothole based on any kind of shading issue. So we have a plaintiff who has admitted she knew the road was in poor condition. After she falls, then she talks about shading. But she doesn't explain how the shading affected the entire road, and she doesn't explain why she didn't look down before stepping off of a curb that was notably higher than the depth of the hole itself. And so I would just say that without a physical obstruction and with no darkness evident by the plaintiff's own testimony, that Condor should be persuasive for the point that we should be looking at the entire roadway's condition as the open and obvious condition. Counsel, if I can ask you about Condor. Condor, the plaintiff in Condor, I don't know if it's he or she, is in the middle of the driveway. And the driveway has no vehicles on it at the time. She had been through it and seen it. There was undisputed testimony from everybody that the entirety of the driveway was in poor condition. Whereas here, just looking at one of the exhibits, Exhibit C, also noted as Exhibit 1, part of the roadway is shown. And just from the photograph, the roadway's obviously been there for some time, but the general condition of the overall roadway isn't that bad. I've seen many worse roads before. There's just this section in front of the house that you can see in that photo up against the curb. So isn't it distinguishable in that respect? And isn't one of the instructions her own vehicle? And isn't that vehicle a foreseeable thing that would be parked up against the curb? So I know that's multiple questions, but I'll do what you can with that. The plaintiff did not testify that the vehicle blocked her view. The only reason the vehicle was even mentioned was because she said that it may have been one of the sources of shading that she was claiming. So it wasn't like she was coming around the vehicle and because of the physical barrier of the vehicle that she couldn't see where she was going. So I don't think that that distinguishes it from Condor. And I think if you look at that exact photo that you pulled up, you can see that the area between the curb and the street, there's about a two-foot wide strip that has multiple potholes in it. And I think that's what we're talking about. Another thing I would like to point out is that in Condor, the plaintiff admitted that she was aware that the roadway, the driveway, was in bad condition. But yes, she said at the time she fell, the particular pothole she fell in was shaded. And that was what the court said was a distinction without a difference, that because we're looking at the entire area and she was aware that it was in poor condition, the shading of one specific pothole is not relevant to whether the whole area was open and obvious as a hazardous area. So for these reasons, we would ask you to affirm the judgment of the court below. Thank you. Justice Kennedy, thank you very much. And Mr. Compton, you may proceed if you wish to. Your Honors, I'm just going to very quickly talk about Clifford v. Wharton, the Wall case, and American National Bank, the Powerline case. Because I think both of them are fascinating, particularly American National Bank. The Supreme Court itself said that the Powerlines up above, because two other workers on, they were not talking about distraction. They were talking about open and obvious. And they said two other workers said we didn't see them when we were there working. And you've all asked some pretty practical questions. And I thought when I read the Supreme Court case, I'm like, they're working on a billboard. So they're looking up to work on a billboard unless these guys are eight feet tall. So you ask why they didn't see them. And yet the Supreme Court said two people said we were at the billboard working. We never noticed. We never saw. They said that creates a question of fact. The Illinois Supreme Court said that creates a question of fact. We've got to send this back to the appellate court. So I do find it fascinating. That's part of my question about the muddle of the exceptions and the minutiae and even your questions and counsel's answers. I'm sitting there listening thinking sounds like you're arguing over questions of fact here. So I think counsel's argument speaks for itself. The second, Clifford v. Wharton. The Clifford court said that the threshold for deciding a distraction is low. And that's a quote. They cited the Supreme Court and they said this is a low threshold because juries should hear this. And I spent some time in my reply brief saying, you know, we've gone from pure comparative negligence and these rules were all around when 1% you were done. So open and obvious made a little sense when 1% you were done. But you can see the court saying, well, in this case it's a little different. In this case it's a little different. And in this case, if we look at Clifford and there is no rule anywhere, no court has ever said the distraction has to be a large obstacle or something urgent. No court has said that. If you look at the totality of those decisions on distraction, the question is whether the defendant can anticipate the situation where a distraction would occur, not whether it was a big distraction or a little distraction or an urgent distraction or whether your coach tells you to get a football helmet. And that's what happened here. It's in a loading and unloading place. She's stepping off a curb. She's going to her trunk. And so I think both there is a factual question about the open and obvious because of the testimony and there is a factual question about the distraction. And a jury can sort all this mess out, and I'm glad I don't have to. So I'd ask this court to send it back and let the good citizens of Kane County decide. The arguments that have been going on here are fact for now 25 minutes. Thank you. Thank you, counsel. And thank you both for your arguments this morning. We will take, well, now this afternoon, we'll take the batter under advisement and we will get a decision as soon as possible. Thank you so much.